## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

CLINTON E. DRAWDY,

      Plaintiff,

vs.                                    Case No. 3:08-cv-209-J-HTS

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

      Defendant.

_____

## OPINION AND ORDER[1]

### I.  Status

    Clinton  E.  Drawdy  is  appealing  the  Social  Security
Administration's  denial  of  his  claim  for  Disability  Insurance
Benefits.  His alleged inability to work is based on a back injury
and chronic pain.  Transcript of Administrative Proceedings (Tr.)
at  74.    Mr.  Drawdy  was  ultimately  found  not  disabled  by
Administrative Law Judge (ALJ) William H. Greer on April 25, 2007.
*Id.* at 12, 20.  Claimant has exhausted the available administrative
remedies and the case is properly before the Court.  On appeal, it
is  argued  the  judge  "erred  in  ignoring  the  complete  opinions  of
Plai[n]tiff's  treating/consultative  physicians  and  by  giving  no
weight  to  the  Plaintiff's  vocational/educational  limitations  as

---

[1]     The  parties  have  consented  to  the  exercise  of  jurisdiction  by  a
United  States  Magistrate  Judge.    Notice,  Consent,  and  Order  of  Reference -
Exercise of Jurisdiction by a United States Magistrate Judge (Doc. #9).

described by Dr. Hartman." Memorandum in Opposition to the Commissioner's Decision (Doc. #10; Memorandum) at 8 (capitalization and emphasis omitted).

## II.  Legal Standard

This Court reviews the Commissioner's final decision as to disability[2] pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Whereas no special deference is accorded the application of legal principles, findings of fact "are conclusive if supported by substantial evidence[.]" *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (internal quotation marks omitted); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quoting *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Substantial evidence has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Falge*, 150 F.3d at 1322 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Ingram*, 496 F.3d at 1260. Despite the existence of support in the record, the ALJ's determination may not be insulated from remand where there is a

---

[2]    "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A). An ALJ must follow the five-step sequential inquiry described in 20 C.F.R. §§ 404.1520, 416.920, determining as appropriate whether the claimant 1) is currently employed; 2) has a severe impairment; 3) is disabled due to an impairment meeting or equaling one listed in the regulations; 4) can perform past work; and 5) retains the ability to perform any work in the national economy. *See also Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

"failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted[.]" *Ingram*, 496 F.3d at 1260 (internal quotation marks omitted); *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

### III.  Discussion

According to Plaintiff, "it was clear that [he] had been orthopedically restricted to sedentary type work by Drs. [Carlos R.] Tandron, [James W.] Dyer, and [Timothy J.] McCormick." Memorandum at 9.  He alleges the ALJ ignored these opinions. *See id.* at 8.  Additionally, he claims the judge erroneously accorded no weight to "Dr. [Joseph H.] Hartman's vocational/educational assessment[, which] showed profound deficits[ including] a full scale IQ of 65 (extremely low), a reading comprehension of 2.3 grade level, and a spelling level of the 1.6 grade." *Id.* at 9; *see also id.* at 8.  Finally, he mentions "Dr. [Mark C.] Hof[]man[n] had opined that it was necessary for [him] to utilize a cane and had even requested a permanent handicapped parking permit[.]" *Id.* at 9.

An individual's impairments, including any related symptoms, such as pain, "may [result in] physical and mental limitations that affect what [one] can do in a work setting."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  Residual functional capacity (RFC)

is defined in the regulations as what an individual "can still do despite [his or her] limitations." *Id.* It can include descriptions of limitations apart from those observed in the diagnosis and treatment of a medical condition. *See id.* §§ 404.1545(a)(3), 416.945(a)(3). Thus, "observations of [a claimant's] limitations from [his or her] impairments . . . provided by [the claimant, his or her] family, neighbors, friends, or other persons" will be considered. *Id.* This assessment is not to be equated with the ultimate decision on disability, but is merely an interim evaluation considered along with other factors in making the disability decision. *See id.* §§ 404.1545(a)(5)(ii), 416.945(a)(5)(ii). An individual's limitations may be exertional, nonexertional, or both. *See id.* §§ 404.1569a(a), 416.969a(a).

The regulations provide that decisions regarding an individual's RFC are made solely by the Commissioner. *See id.* §§ 404.1546(c), 416.946(c). According to SSR 96-8p, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"

The ALJ found Mr. Drawdy

> has the residual functional capacity to perform light
> work with the ability to sit up to 8 hours with the need
> to get up for one to two minutes once per hour and then
> resume sitting, stand up to 3 hours and for 45 minutes at
> a time, walk 2 hours a day and for 10 minutes at a time,
> lift 10 pounds frequently, occasionally bend and stoop,
> no crawling, kneeling or reaching above shoulder level,
> no work around heights or machinery, the ability to read
> short simple instructions and writing would be limited to
> 1-2 sentences with misspellings.

Tr. at 17 (emphasis omitted). The judge did not mention Dr. Tandron by name, but he twice cited to an exhibit (among many other exhibits cited in long strings) containing records for this doctor as part of his discussion at step two of the sequential evaluation process. *See id.* at 14. He briefly summarized evidence from Drs. Dyer, *see id.* at 15, and McCormick, *see id.* at 16, but did not refer to any of the three physicians (or cite to exhibits containing records from them) in his RFC analysis. *See id.* at 17-19. Similarly, he did not explicitly consider whether evidence from these doctors supported a restriction to sedentary work. Instead, he stated vaguely that "[m]ultiple reports and assessments have . . . consistently determined while [Claimant] may have pain and some degree of functional difficulty, [he] is nevertheless able to perform light work activity." *Id.* at 19.

On the other hand, Plaintiff references no functional opinions from Dr. Tandron that "clear[ly shows he] . . . had been orthopedically restricted to sedentary type work by" this doctor,

- 5 -

Memorandum at 9, and the Court's own review has failed to disclose them.   It is noted Dr. Tandron checked a box in January 2001 indicating agreement with Dr. Howard Weiss "that Mr. Drawdy is capable of returning to light duty employment at a sedentary position." Tr. at 158.  Further, he opined multiple times in 2000 that Plaintiff was experiencing a temporary total disability. *See id.* at 160, 162, 169-71.  Yet these statements relate to a period for which Claimant was adjudicated disabled, *see id.* at 12 (describing finding of "closed period of disability commencing September 6, 2000 and ceasing August 10, 2002"), and predate the current alleged onset date by several years. *See id.* (disability claimed as of April 13, 2004).   Moreover, a conclusion as to disability or ability to work is essentially legal rather than medical.   It "is not the type of 'medical opinion' to which the Commissioner gives controlling weight." *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (per curiam) (determinations about disability or ability to work "are legal conclusions[,]" not medical opinions).   As "a physician is not qualified to make" judgments as to disability or ability to work as defined by law, *Norfleet v. Sullivan*, CIV. A. No. 89-5978, 1990 WL 29675, at *4 (E.D. Pa. Mar. 14, 1990); *see also Townsend v. Apfel*, 47 F. Supp. 2d 958, 964 (N.D. Ill. 1999), an ALJ would be unjustified in

according significance to legal determinations offered by doctors. Therefore, the judge will not be faulted for omitting mention of any conclusion as to disability.

Dr. Dyer's report also dates from the earlier, closed period of disability. *See* Tr. at 190 (dated December 6, 2001). At that time, the physician indicated Plaintiff "wish[ed] to return to gainful employment to a sedentary type job." *Id.* at 192. While this information is not too helpful, he did suggest Mr. Drawdy needed to "alternately sit and stand for one hour at a time[.]" *Id.* Still, as the ALJ acknowledged Claimant is limited to standing "for 45 minutes at a time" and would need to take a break from sitting every hour, *id.* at 17, it is not clear Dr. Dyer's opinion, if accepted, would indicate a need for additional restrictions.

The evaluation from Dr. McCormick was apparently performed much more recently. His report bears the date September 16, 2004. *See id.* at 369. It was observed therein that Claimant "was ambulating with a cane and holding the cane in the left hand. He did demonstrate ambulation of about 40-50 feet in the office environment without . . . use of the cane." *Id.* at 371. Grip strength and fine manipulation were normal. *See id.* There was a full range of motion demonstrated in both the cervical and lumbar regions. *See id.* Dr. McCormick expressed his belief Plaintiff "probably is functioning in a sedentary activity level and would

not be able to perform heavier lifting or carrying type activities." *Id.* at 372. Unfortunately, the physician does not convey his understanding of what specific abilities sedentary functioning entails.

Mr. Drawdy also notes that "Dr. Hof[]man[n] had opined that it was necessary for [him] to utilize a cane and had even requested a permanent handicapped parking permit[.]" Memorandum at 9. Dr. Hofmann indeed stated Plaintiff needed a cane "to assist with gait[.]" Tr. at 459. He additionally stated "[a] handicap-parking sticker is being filled out for him[,]" *id.* at 461, and on the application for the permit he appears to have indicated Claimant could not walk two hundred feet without resting. *See id.* at 460.

The ALJ cited to and described various records from this physician. *See id.* at 14 (knee problems), 15 (injections and medication, lifting and carrying), 16 (pain complaints, medication, exam findings). However, he omits any reference to the doctor's opinion as to a cane. *Cf. id.* at 18 (mentioning Claimant's testimony that he "uses a cane"). The judge seems to have accepted Mr. Drawdy's own testimony concerning the RFC determination that he could walk up to ten minutes at a time. *See id.* at 18, 523, 536-37. Nevertheless, although he recounted the hearing testimony bearing thereon, *see id.* at 18, the ALJ did not explicitly address the potential need for a cane while walking for these ten-minute

intervals.  Plaintiff averred that he had been using a cane for four years, and that he found the assistive device necessary when he attempted a return to work since his "leg gives out on [him] a lot and it locks up and [the cane] relieves a lot of pressure on [his] back."  *Id*. at 519.  When the judge asked, in regard to short periods of walking, "that . . . would be with a . . . cane normally, is that right?" Mr. Drawdy responded that "most of the time" it would.  *Id*. at 537.

Because the ALJ did not affirmatively reject the need for a cane, the Court cannot be sure whether he intended to recognize it. In any event, it would seem the inclusion of this restriction could alter the outcome of this case.[3]  Therefore, even if the judge meant to reject entirely the alleged limitation, he erred by failing to explain his reasons for doing so.  This matter will be remanded with instructions for the judge to explicitly consider whether Claimant requires the assistance of a cane, especially when walking for short periods.[4]

Concerning the records from Dr. Hartman, the ALJ reasoned as follows.

---

[3]     In the questioning of the vocational expert by Plaintiff's lawyer, "[m]ust use a cane" was included among other hypothetical additions, *id*. at 540, but the independent effect of this variable was not elicited.

[4]     According to SSR 96-9p, "if a medically required hand-held assistive device is needed only for prolonged ambulation . . . the unskilled sedentary occupational base will not ordinarily be significantly eroded."

While an earlier assessment dating in November 2001 also found the claimant to have a reading disorder, a disorder of written expression, mild mental retardation and an adjustment disorder with mixed anxiety and depressed mood, "it is recommended that he be counseled to consider vocational training and work opportunities of a non-verbal nature in which he can take advantage of his relatively stronger non-verbal abilities in perceptual organization and visual processing speed.["]

Therefore, . . . the record clearly demonstrates the claimant's ability to perform lesser demanding work activity that is unskilled in nature. . . . [T]he claimant has the . . . ability to read short simple instructions and writing would be limited to 1-2 sentences with misspellings.

*Id.* at 16-17 (citation to record and emphasis omitted).

The judge did not make a direct finding as to the validity of the full scale IQ score of 65 reported by Dr. Hartman.[5]  *See id.* at 204.  In the vocational expert's opinion, having an IQ of 65 would play a key role in excluding the jobs Mr. Drawdy might otherwise be able to perform.  *See id.* at 541.  Consequently, and particularly as this case is already being remanded on another ground, the ALJ will be asked to reevaluate Plaintiff's mental capacity.

## IV. Conclusion

In light of the foregoing, the Clerk of the Court is directed to enter a judgment pursuant to sentence four of 42 U.S.C. § 405(g)

---

[5]     At step four, the ALJ wrote that "[t]he vocational expert further noted the claimant's ability to perform . . . past skilled work is inconsistent with mild mental retardation.  Accordingly, the claimant is unable to perform past relevant work."  *See id.* at 19.  This passage could be read as an acknowledgment that Plaintiff's present mental abilities would not qualify him for his past work.  Alternatively, if the judge meant to reject Dr. Hartman's findings, he should have done so explicitly and supported his determination with adequate reasoning.

**REVERSING** the Commissioner's decision with instructions to 1) explicitly consider whether Mr. Drawdy requires the assistance of a cane when walking and, if so, the impact (if any) on RFC; 2) reevaluate Claimant's mental capacity; and 3) conduct any further proceedings deemed appropriate.   If benefits are ultimately awarded, Plaintiff's counsel shall have thirty (30) days from receiving notice of the amount of past-due benefits to seek the Court's approval of attorney's fees under the Social Security Act.

   **DONE AND ORDERED** at Jacksonville, Florida, this 17th day of November, 2008.

                                        /s/         Howard T. Snyder
                                        HOWARD T. SNYDER
                                        UNITED STATES MAGISTRATE JUDGE


Copies to:

Counsel of Record
     and pro se parties, if any

- 11 -